UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                                          CASE NO.

**JAMES J. CURLEY**                                                   **14-12678**
**WANDA M. CURLEY**                                              SECTION A

DEBTORS                                                                      CHAPTER 13

<u>**REASONS FOR DECISION**</u>

The Motion for Relief from Stay  filed by AP Direct L.L.C. ("AP") and the Objection filed by debtors, James and Wanda Curley (collectively "Debtors") came before the Court on May 9, 2017.  At the conclusion of the hearing, the Court took the matter under advisement.

## I.  Findings of Fact

On October 6, 2014, Debtors filed a Voluntary Petition for Relief under Chapter 13 of the Bankruptcy Code ("Petition Date").  At the time of their filing, Debtors claimed an ownership interest in real property located at 5824 Providence Place, New Orleans, Louisiana ("Providence").  Prior to filing for relief, Providence was sold at tax sale for nonpayment of 2012 property taxes ("Tax Sale").  AP purchased the property after paying $3,381.35.  A Tax Certificate was issued on October 15, 2013, and recorded on October 25, 2013.  Debtors listed the City of New Orleans ("City") as a unsecured priority creditor in the amount of $3,500.00 on their Schedules of Assets and Liabilities.  AP was not listed as a creditor nor noticed as a party in interest.

On October 20, 2014, the City filed six (6) proofs of claim totaling $27,728.27:

1.  Claim 6 in the secured amount of $3,215.43 for property taxes assessed under tax bill 39W13602 on property located at 7910 Mayo Rd., New Orleans, La.;

2.  Claim 7 in the secured amount of $6,282.12 for property taxes under tax bill no. 38W411616 on property located at 2519 Pressburg Ct., New Orleans, La.;

3.  Claim 8 in the secured amount of $1,888.20 for property taxes assessed under tax bill 39W13602 on property located at 7910 Mayo Rd., New Orleans, La.;

4.  Claim 9 in the secured amount of $6,361.05 for an undisclosed property. The Proof of Claim attached a Tax Sale Redemption Calculation for tax bill no. 39W027311;

5.  Claim 10 in the secured amount of $8,265.82 for an undisclosed  property. The City attached a Tax Sale Redemption Certificate for tax bill no. 39W904321; and

6.  Claim 11 in the secured amount of $1,169.65 for an undisclosed property. The City attached a Tax Sale Redemption Calculation under tax bill no. 39W904321.

On January 30, 2015, Debtors' Amended Chapter 13 plan of reorganization was confirmed ("Plan"). The Plan proposed to pay the City $27,728.27 in priority claims over five (5) years without interest. Neither the City nor AP filed an Objection to confirmation.  The City was noticed of the Plan, period to object to confirmation, confirmation hearing date and entry of the confirmation order.  AP did not receive notice of either Debtors' filing for bankruptcy relief, the Plan, objection deadline, confirmation hearing date, or entry of the confirmation order.

On February 10, 2017, AP filed a Petition to Confirm Tax Sale in the Civil District Court for the Parish of Orleans.  It was then that Debtors' counsel informed AP of Debtors' pending bankruptcy case.  AP has filed the instant Motion for Relief to prosecute its Petition to Confirm Tax Sale.

AP asserts that the period to redeem Providence has lapsed and it is entitled to quiet title. It argues that under Louisiana law the redemption period may not be interrupted, suspended or extended.  As a result, Debtors' Plan may not extend or suspend the running of the redemptive period.  It also asserts that to the extent the Plan seeks to bind it to repayment over a five (5) year period, Debtors' failure to notice it of the Plan's contents, objection deadline for confirmation, confirmation hearing, and confirmation order violates due process.

2

Debtors counter that the Plan provides for repayment to the City over five (5) years, and the

confirmation hearing and objection deadline were properly noticed to the City. It asserts AP's rights

are derivative from the City's. As a result, because the City did not object to confirmation, AP is

bound by the terms of the Plan.

## II.  Law and Analysis

Louisiana law provides that property sold at tax sale is:

[R]edeemable for three years after the date of recordation of the tax sale, by paying
the price given, including costs, five percent penalty thereon, and interest at the rate
of one percent per month until redemption.[1]

The three (3) year redemption period is peremptive under Louisianan law.[2] Under state law,

peremptive periods "may not be renounced, interrupted, or suspended."[3]

Section 108(b) of the Bankruptcy Code provides in pertinent part:

Except as provided in subsection (a) of this section, if applicable nonbankruptcy law,
an order entered in a nonbankruptcy proceeding, or an agreement fixes a period
within which the debtor or an individual protected under section 1201 or 1301 of this
title may file any pleading, demand, notice, or proof of claim or loss, cure a default,
or perform any similar act, and such period has not expired before the date of the
filing of the petition, the trustee may only file, cure, or perform, as the case may be,
before the later of–

(1) the end of such period, including any suspension of such period occurring
on or after the commencement of the case; or

(2) 60 days after the order of relief.

---

[1] La. Const. Art. VII, § 25(B)(1).

[2] La. R.S. 47:2241.

[3] La. C.C. Art. 3461.

3

Thus, under the Bankruptcy Code, if a debtor holds an unexpired right of redemption on the petition date, the debtor has until the period allowed under state law or sixty days from the petition date, whichever is later, to redeem.

Whether or not Debtors timely redeemed, they also contend that they had the right to "cure" any failure to satisfy their obligation to pay property taxes by confirming a plan that extends the period of redemption beyond the statutory period.

### A.  May Debtors Redeem Providence through Plan Payments?

A plan repays a creditor on a pre-existing debt over time.  A plan may force a creditor to accept payment to cure a default over time.  However, it may not adjust the rights of a third party who is not a creditor of the estate except in very limited circumstances not applicable in this case.[4] Because only a creditor with an allowed claim may receive distributions under a Chapter 13 plan,[5] it is inappropriate for a debtor to place payments to a non-creditor into a plan.

By virtue of the Tax Sale, AP became the 70% owner of Providence.[6]  AP's payment of taxes after the Tax Sale extinguished Debtors' obligation to the City.[7]  When AP purchased Providence, it did not purchase Debtors' obligation to the City.  Instead, it obtained a right to Providence's title,

---

[4] *See, e.g.*, *Kasual Kreation, Inc. v. Heller Financial, Inc. (In re Kasual Kreation, Inc.)*, 54 B.R. 915 (Bankr.S.D.Fla. 1985) (enforcement of a guaranty against a nondebtor may be stayed  pending reorganization if the guarantor is necessary to the reorganizational effort and would be distracted by enforcement); or In re Davis, 730 F.2d 176 (5th Cir. 1984) (direct action against debtor's insurer would not be permitted when to do so could deplete the policy and lead to an unequal distribution among claimants of equal legal standing).

[5] F.R.B.P. 3021; *In re Mason*, 520 B.R. 508, 513 (Bankr.S.D.Miss. 2014).

[6] The parties did not explain and the record does not reflect why AP is the 70%, rather than 100%, owner of Providence through its Tax Sale Certificate.

[7] Debtors owed other obligations to the City, but the payment of 2012 property taxes on Providence was not one of them.  *See* Proofs of Claim 6, 7, and 8.

4

assuming Debtors did not exercise their right to redeem.  While AP's right to Providence was subject to a right of redemption in favor of Debtors, Debtors were under no obligation to exercise the redemptive right and owed no obligation to AP if they did not redeem.  Nor could AP force Debtors to redeem or waive their right of redemption.

A "creditor" is a person who "has a claim against the debtor"[8] *on the Petition Date*. Section 101(5) defines a "claim" as a:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

On the Petition and confirmation dates, Debtors held an asset, a right of redemption, which enabled them to salvage  Providence under set conditions. Those conditions included payment of the amounts paid by AP, plus interest and penalties, within a prescribed period of time.  Failure to exercise this right did not result in any liability to Debtors, merely a lost opportunity.  *In re Richter*[9] illustrates this holding.

In *Richter*, Marrakesh Community Association ("MCA") initiated a foreclosure proceeding on the debtor's principal residence.  Rustling Oaks, L.L.C.  ("Oaks") purchased the debtor's residence at a prepetition foreclosure sale on October 10, 2013.  Under California law, the debtor had a right to redeem the property within 90 days of the sale.  On the final day to redeem, the debtor filed a Voluntary Petition for Relief under Chapter 13.  The debtor then confirmed a plan that

---

[8] 11 U.S.C. § 101(10).

[9] *In re Richter*, 525 B.R. 735 (Bankr. C.D. Cal. 2015).

provided for redemption of the property.  After confirmation, Oaks filed a Motion for Relief from the Automatic Stay in order to take possession.

The *Richter* Court noted that 11 U.S.C. § 1322(c)(1) provides that default on a principal residence may be cured " until such residence is sold at a foreclosure sale conducted in accordance with nonbankruptcy law."  As the  foreclosure sale had been properly conducted, debtor could not cure the default to MCA though the plan.

The debtor also argued that he could modify his redemption right by paying over the length of the plan.  The Court found that Oaks was not the holder of a claim, so its rights could not be modified under section 1322(b).  The *Richter* Court concluded that since the debtor had no obligation to pay the redemption price, Oaks had no "right to payment" under section 101(5)(A). It also found that  failure to redeem would not entitle a tax purchaser to a money judgment.[10] Finally, although the redemption period had not expired as of the petition date and the debtor had an additional sixty days to redeem the property, that period had already expired.   As a result,  the debtor had lost his opportunity to redeem.

In this case, the City foreclosed on a tax lien encumbering Providence and securing the tax obligations Debtors owed to the City for 2012 taxes.  The Tax Sale was completed prior to the Petition Date.  Because the Tax Sale was complete, the tax obligation was satisfied.  What remained was Debtors' right of redemption.  That right burdened AP's ability to obtain title, but did not create

---

[10]  *Richter*, 525 B.R. at 748.

an enforceable right to payment in favor of AP because as of the Petition Date, Debtors had not yet exercised their right to redeem. Thus, as of the Petition Date AP held no claim against Debtors.

Debtors argue that *Richter* is wrongly decided and cite this Court to *In re LaMont*[11] which supports their position. In *LaMont*, Grundy County Illinois sold the LaMont's home to a third party at tax sale in November 2008, after which the third party purchaser received a Certificate of Purchase. Under Illinois law, the LaMonts had two and one half years after the issuance of the Certificate of Purchase to redeem. Redemption was effected by paying the county clerk the full amount of taxes owed. According to Illinois law, three (3) to six (6) months before the redemption period expired, the purchaser was required to file a petition for tax deed and give notice to the debtor.

In December 2008, the LaMonts filed for bankruptcy relief and confirmed a plan. The plan provided for payment of the redemption amount directly to the taxing authority. After the redemption period expired, the purchaser asked the state court for an order directing the county clerk to issue a tax deed, but the state court refused citing the existence of the automatic stay. The purchaser then sought relief from the stay from the Bankruptcy Court.

After rulings by the Bankruptcy and District courts, the Seventh Circuit held:

> In effect, what the tax sale procedure does is sell the county's equitable remedy to a third party, the tax purchaser. In this way, the tax sale procedure provides immediate income to the county. In order to incentivize the purchase of the county's equitable remedy, the statutory framework enlarges the remedy by putting the tax purchaser in a position to take the property entirely if the taxes are not paid in the form of a redemption. Notwithstanding the expansion, the tax purchaser still owns, as modified, the county's equitable remedy against the property for nonpayment of taxes....Accordingly, [the tax purchaser] holds a right to payment, or alternatively, a right to an equitable remedy against the debtors' property. "Either way, there can be no doubt that the [tax purchaser's] interest corresponds to an 'enforceable

---

[11] *In re LaMont*, 740 F.3d 397 (7th Cir. 2014).

obligation' of the debtor."  Therefore, the tax purchaser holds a claim against the debtors that may be treated in bankruptcy.[12]

The Court found that the purchaser's right to title was only vested after the filing of a petition in state court, notice to the debtor, and the issuance of a tax deed.  Prior to that, the Court found that the purchaser held a right to payment, or alternatively a right to an equitable remedy against the debtors' property.  The property sold at tax sale was still the property of the debtor and property of the estate.  As a result, the Court held that a tax purchaser held a claim against the estate.

In Louisiana as in Illinois, purchase at tax sale does not immediately transfer ownership. La. R.S. 47:2121 provides:

> (B) Effect of tax sale on property interest. No tax sale shall transfer or terminate the property interest of any person in tax sale property ... until that person has been duly notified and both the redemptive period and any right held by that person to assert payment or redemption nullity under 47:2286 have terminated.

> (C) (1) A tax sale confers on the tax sale purchaser ... only tax sale title.  If the tax sale property is not redeemed within the redemptive period, then at the termination of the redemptive period, tax sale title transfers to its holder ownership of the tax sale property, free of the ownership and other interests, claims, or encumbrances held by all duly notified persons. ...

Debtors are the record owners of Providence, and it is property of the estate.  However, as the Court has previously explained,  AP  has no "right to payment" from Debtors or "claim" pursuant to section 101(5) because under Louisiana law, Debtors had the right, but not the obligation, to redeem Providence.  Upon the passage of time and failing the exercise of redemption, AP's title vests and neither state nor Federal law permits an extension, modification, or suspension of AP's rights in this

---

[12] *Id.* at 408-409 (citing *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S.Ct. 2150 (1991)).

circumstance.  In short, on the Petition Date, AP had an ownership interest held in suspense awaiting a resolutory condition, the passage of time.

Because AP was not a creditor but held an interest in property of the Debtors' estate, it was a party in interest to this case.  Under Bankruptcy law, parties in interest retain their rights after filing with limited exceptions.  For example, under 11 U.S.C. § 363, property held in co-ownership with a debtor may be sold without the nondebtor's consent, but the nondebtor is entitled to receive his proportionate share of the sale proceeds.  Actions by a creditor of a debtor against officers, directors, managers, co-obligors, or insurers may be temporarily stayed, pending the reorganizational effort, but those rights may not be permanently affected by a plan.[13]

Despite *LaMont*'s holding, this Court can find no support for the permanent modification of a third party noncreditor's rights under state law through a plan. Instead, the Bankruptcy Code provides only one exception:

> After notice and hearing, a court that enters an order confirming a plan of reorganization under chapter 11 may issue, in connection with such order, an injunction in accordance with subsection to supplement the injunctive effect of a discharge under this section.

The exception does not apply here.  For this reason, Debtors may not modify AP's rights through a Plan.

### B. Does the City's Filing of a Proof Of Claim Affect AP's Rights?

Debtors argue that by filing multiple proofs of claim, the City admitted that it was owed taxes on Providence for 2012 and was, therefore, a creditor of the estate.

---

[13] *See* 11 U.S.C. § 524(g) and its one (1) exception.

9

The City filed six (6) proofs of claim in this case.  Three (3) claims, Claims 6, 7, and 8, are claims for taxes due on other properties owned by Debtors.  Claims 9, 10, and 11 provide calculations for redemption on Debtors' properties sold prepetition at tax sales.  None of the claims specify the physical address of the properties affected.  Debtors allege that Claim 9 provides the calculation for redemption of Providence.  They also assert that because the City filed this claim, it admitted that a debt was due to it.

The attachment to the City's Claim 9 shows that it is for the amount necessary to redeem Providence for 2013 property taxes paid at a tax sale conducted in 2014.  Therefore, Claim 9 does not show that it is the calculation of amounts due to redeem Providence following the Tax Sale on 2012 taxes.

 When a tax sale, foreclosure, sale under writ of attachment, sequestration, or *fieri facias* is conducted, the rights acquired by the purchaser flow from the state and are defined by state law. The party requesting sale does so to satisfy a debt.  Its right to demand sale is often founded by contract (*e.g.* mortgage) but may also be granted by law (*e.g.* tax sales).  However, in either event, the purchaser does not derive its rights or its title from the creditor but the state.  Simply put, the former creditor's position is separate and distinct from the purchaser at public sale.  Thus, the City's actions after the Tax Sale cannot affect the purchaser's rights.[14]

### C.  Does Confirmation of the Plan Bind AP to Its Terms?

Debtors argue that the Plan provided distributions to the City in an effort to redeem Providence.  Even if the Plan improperly affects AP's rights, Debtors assert that the Plan's confirmation is *res judicata* as to the City and AP.

---

[14] *But cf.* cases on equitable extension of redemptive period pp. 12-16.

A Chapter 13 plan is an "exchanged for bargain between the debtor and the debtor's creditor[.]"[15]  A Chapter 13 Plan is not binding on third parties.[16]  Even if AP was a creditor, a Chapter 13 plan is only binding on creditors who received notice.[17]

While Debtors maintain that they were only obligated to notify the City, they fail to appreciate that AP, not the City, was the real party in interest.  AP is the party affected by Debtors' attempt to extend repayment.  In this circumstance, the City is merely the conduit through which payments pass.[18]  The City has no claim against Debtors as it has already been paid by AP nor does it have any equitable or real interest in Providence.[19]

AP's interest was easily ascertainable through the public records. In this case, not only did Debtors fail to give AP notice of their Plan, the Plan did not indicate a desire to redeem Providence. The contents of the Plan referred to the repayment of priority claims as a lump sum owed to the City. Even if AP had received notice, there was no way for it to discern what was being repaid or for which tax bill or property.

---

[15] *In re Oparaji*, 698 F.3d 231, 238 (5th Cir. 2012) (citation omitted).

[16] *In re Harris*, 2008 WL 924939, *5 (Bankr.S.D.Tex. 2008).

[17] *In re Welsh*, 540 B.R. 672, 681 (Bankr.E.D.Ark. 2015).  *See also United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272, 130 S.Ct. 1367, 1378 (2010).

[18] La. R.S. 47:2243 provides that redemption payments "shall be made through the tax collector... The tax collector shall promptly remit the redemption payments to the tax sale purchaser."

[19] This case is remarkably similar to *In re Richter*.  In that case the debtor's failure to give Oaks notice of the plan or the period to object was fatal to any argument to bind Oaks through confirmation.  Simply put, since Oaks was a party in interest entitled to notice of any plan provision that attempted to affect its rights, it was not bound by its terms.  Further, even had notice been given, the *Richter* Court observed that plan did  not clearly indicate that the debtor intended to exercise his right of redemption through the plan payments.  Therefore, both due to lack of notice and definiteness of terms, *res judicata* was inapplicable.

11

Notice under Bankruptcy Rule 2002 is designed to provide the widest possible notice to any party in interest whose rights may be affected by the plan. "Due process requires notice "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of an action and afford them an opportunity to present their objections."[20] In this case, the City's rights were unaffected by the Plan, at least as to Providence, because the City had already been paid in full. Debtors attempted to obtain, through confirmation, a material change in AP's rights.   AP was not a creditor but, under these circumstances, clearly a party in interest readily ascertainable by Debtors. Therefore, Debtors' failure to notice AP cannot be maintained, for certainly this was an attempt to make a taking without due process.

### D.  Must Redemption Be Completed within Three Years?

Redemption is a right created by state law.  Generally, it permits a debtor to retain title  with a lump sum payment of the amount due.  The time period to redeem and the conditions of redemption are defined by state law with one (1)  minor exception.  Under 11 U.S.C. §108(b), if the time to redeem has not expired on the petition date, the debtor has the longer of the remaining period under state law or sixty (60) days whichever is later.

As previously explained, neither AP nor the City were creditors of this debt as the debt to the City had been extinguished through the Tax Sale and Debtor was under no obligation to redeem by paying AP.  Therefore, it was improper for Debtors to list redemption payment to the City as a Plan term. Instead, Debtors were obligated to perform as required by law.

---

[20] *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272, 130 S.Ct. 1367, 1378 (2010) (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70, S.ct. 652, 94 L.Ed. 865 (1950).

12

### 1.) Louisiana Jurisprudence

Debtors argue that although the process of redeeming property sold for taxes must be initiated within a three (3) year period, the process need not be completed within the three (3) years. They cite *Mississippi Land Co. v . S&A Properties II, Inc.*[21] as authority for this proposition. S&A owned two (2) tracts of land in Lafayette, Louisiana. In 1997, the City of Lafayette ("Lafayette") assessed S&A for 1996 property taxes. S&A failed to pay and the parcels were sold at tax sale to Mississippi Land Co. ("Miss Land") in June of 1997. Following the sale, Miss. Land also paid the 1997 taxes on the property.

In 1998, S&A requested and Lafayette supplied it with the amounts necessary to redeem both parcels. S&A paid the amount due, but unbeknownst to it, Lafayette had miscalculated the necessary amounts owed and payment to the third party purchaser was short. Miss. Land imputed the payment it received to reimbursement of 1997 taxes rather than the amounts it paid Lafayette for 1996 taxes. As a result, a portion of the 1996 redemption amount remained outstanding. In 2000 Miss. Land filed a Petition to quiet title, alleging that the property had not been redeemed.

The Louisiana Supreme Court ruled that S&A's payment should be imputed first to the redemptive option, or the 1996 taxes paid at tax sale. Of particular concern to the Court was the fact that Lafayette had miscalculated the amounts necessary to satisfy redemption of the parcels. For this reason, the Court ruled S&A's attempt to redeem within the three (3) year period perempted the statutory lapse.

---

[21] *Mississippi Land Co. v . S&A Properties II, Inc.*, 2001-1623 (La.App. 3 Cir. 5/8/02); 817 So.2d 1200, 1204.

*Mississippi Land* relied on a prior case, *Becnel v. Woodland*.[22]  In *Becnel*, Woodland's house was sold at tax sale to Becnel.  The sale was recorded on August 29, 1988.  In 1991, Woodland requested the amount needed to redeem his property.  He was told the city needed time to calculate the amount but would get back to him.  On September 6, 1991, after the redemptive period had expired, the city provided Woodland with the amount needed.  Woodland paid to redeem the property, and the city issued a tax redemption deed.

Becnel subsequently filed suit to confirm the sale.  The lower court ruled in favor of Becnel, stating that the redemptive period expired prior to Woodland's payment.  However, the appellate court found that Woodland's attempt to redeem the property within the three (3) year period was sufficient to initiate the redemptive process, "[W]hile the redemptive process *must be initiated* within the three year period, it need *not be completed within* that time period."[23] The *Becnel* Court relied heavily on Woodland's timely request for payout figures and the city's failure to timely provide the payout calculation.

The Court in *Burns v. Harris*[24] made clear that equity does not always favor allowing redemption to be completed after the expiration of the three (3) year period.   In *Burns*, Francis Harris' property was sold at tax sale by the City of Shreveport ("Shreveport") on June 9, 1993, to Providence Trust ("Trust") for 1992 outstanding taxes.  The tax sale deed was issued on June 16, 1993, and was recorded on June 29, 1993. After this, the Trust transferred the property to Burns.

---

[22] *Becnel v. Woodland*, 628 So.2d 89 (La. App. 5 Cir. 1993), *writ denied*, 93-3108 (La. 2/11/94); 634 So.2d 374.

[23] *Id.* at 91 (emphasis in original).

[24] *Burns v. Harris*, 41,881 (La. App.2 Cir. 5/23/07); 957 So.2d 921.

On August 9, 1999, Burns filed suit to take title and possession of the property and received a default judgment.

Burns' default judgment was obtained while Mrs. Harris was impaired with a brain tumor. After default was entered, Ms. Harris' curatrix filed a Petition to Annul the Default Judgment. The curatrix alleged that $3,135.65 was paid on March 28, 1996, overpaying the amounts necessary to redeem. However, no tax redemption deed was ever issued.

The Court found that the payment was made to Caddo Parish, rather than Shreveport. "Mr. Harris did not send the payment to the correct taxing authority or make clear that the payment or part thereof was to redeem [the property] through [Shreveport]."[25]   As a result, Caddo applied the payment to current taxes, not those pertaining to the tax sale.

In discussing Louisiana jurisprudence, the *Burns* Court acknowledged that some Louisiana cases, including *Mississippi Land* and *Becnel,* provide that a redemption must be instituted, but need not be completed, during the three (3) year redemptive period. However, the *Burns* Court noted:

> [E]quitable considerations favor the tax sale debtor when some mistake or action by the tax collector or tax sale purchaser prevents the tax sale debtor from redeeming his property within the three year period. Also pertinent to this matter is the important and long-standing public policy of protecting the certainty and marketability of land tiles. This policy underlies the three-year peremptive period applicable to redemptions.[26]

The Court held:

> We find that the facts of this matter are not comparable to the equitable considerations in other cases which have favored redemption. Over ten years passed with no effort to complete the redemption. Allowing the redemption at this late date, particularly when the delay is not attributable to any error or tactic by the tax sale

---

[25]  *Id.* at 928.

[26]  *Id.* at 926 (citing *Harris v. Estate of Fuller*, 532 So.2d 1367 (La. 1988) and *Fleckinger v. Smith*, 319 So.2d 881 (La. App. 4th Cir. 1975).

purchaser or the City's taxing authority, would violate the strong policies favoring the protection of land titles and likely subject the tax sale scheme and tax sale titles to greater and increased litigation.  For these reasons, we find that redemption was not timely initiated and shall not be completed eleven years later. [27]

In *Mississippi Land*, the Court found that the buyer wrongly imputed the redemption payment to later taxes.  In *Becnel*, Woodland attempted to redeem the property within the three (3) year period  but was unable to get the correct amount needed from the city.  In both cases, the party seeking to redeem property initiated redemption within the three (3) year period, and failure to complete the redemption during the three (3) year period was caused by a governing authority.

There are no such equitable considerations in this case.  Partial payments were made under Debtors' Plan to the City before the redemptive period expired.   However, the Plan evidences no intent to redeem Providence.  Nor does it state that payments to the City should be imputed to redeem Providence before payment of outstanding obligations to the City.  In fact, there is no evidence that AP received any payments during the case.  Because this failure is not the fault of the taxing authority or tax purchaser, but rather an attempt by Debtors to extend the period of redemption beyond that statutorily allowed, the legal precedent cited by Debtors is inapplicable.

### 2.) Federal Jurisprudence

Bankruptcy jurisprudence differs as to whether debtors may utilize plan payments toward the satisfaction of redemptive options.  For example, in *In re Bolton*,[28] a debtor's car loan matured on March 29, 2008, without full payment.  Under the loan documents, Bolton had thirty (30) days

---

[27]  *Id.* at 929.

[28]  *In re Bolton*, 466 B.R. 831 (Bankr.S.D.Miss. 2012).

16

to redeem the vehicle through full payment.  Instead on May 1, 2008, Bolton filed for Bankruptcy

relief under Chapter 13.  That case was dismissed on February 25, 2009, without payment to the

creditor.

Bolton then filed another bankruptcy case on June 3, 2009, which was dismissed on

September 27, 2011.  Bolton made three (3) payments to the loan company during this case totaling

$174.76.  On October 10, 2011, Bolton's vehicle was repossessed.  On October 11, 2011, Bolton

filed a third case.

Although Bolton had failed to redeem the loan in the prior two (2) cases, under Mississippi

Code Ann. § 75-67-411, a pledgor of collateral has three (3) days after repossession to redeem.

Since Bolton filed her third case within three (3) days of repossession, 11 U.S.C. §108(b) extended

her right to redeem for sixty (60) days following the petition date. However, the Court found

Bolton's right was only exercisable by full payment on or before the expiration of the sixty (60) day

period, not as she proposed by extension and through her plan.  The Court held:

> If Bolton wishes to exercise her right of redemption, she must do so by immediate
> payment of the entire amount within the statutory redemption period, as extended by
> § 108(b) not by payment through her Chapter 13 plan.  Although §1322 (b)(2) and
> (3) permit modification of secured holders' rights to "provide for the curing and
> waving of default," allowing payments over the life of the plan would impermissibly
> create a property right that did not exist prepetition and effectively operate as a
> suspension of the redemption period....The automatic stay does not toll the
> redemption period. ...Allowing payment through the plan would effectively suspend
> the redemption period beyond the statutory period, rendering §§ 541 (b)(8) and
> 108(b) useless.[29]

---

[29] *Id.* at 839-40.  Section 541(b)(8) does not apply to the facts of this case as it pertains to
pawned property.

17

On the other hand in *In re Prado*,[30] the debtor  pawned various items and subsequently filed

for bankruptcy relief under Chapter 13.  Although debtor had defaulted prepetition and the pawn

broker had instituted steps to forfeit title in the goods, it had not finalized the transfer under Texas

law before the debtor filed for relief.  As a result, the automatic stay prohibited any further action

to acquire title. The *Prado* Court  found:

> ...[I]n other jurisdictions §108 may generally limit a debtor's right to redemption to
> 60 days because applicable state law requires no affirmative act for title to pass to
> the secured creditor upon expiration of the redemptive period.[31]

After finding that title was still in the debtor's name and *the debt was still outstanding*, the *Prado*

Court found that the redemptive limitation was inapplicable and the plan could cure the creditor's

default over time.

Debtors cite *In re Pittman*[32] for the proposition that taxes can be paid through a Chapter 13

plan even when the final payment will exceed the redemptive period.  In *Pittman,* the debtor's

property was sold at tax sale and acknowledged by the sheriff on December 30, 2013.   Under

Pennsylvania law, the debtor was entitled to redeem the property by paying the purchaser within

nine (9) months of the sheriff's acknowledgment.  The debtor filed a Voluntary Petition for Relief

under Chapter 13 on September 23, 2014, just shy of the expiration of the redemptive period.  The

purchaser filed a secured claim, and the debtor's plan proposed to pay it the full redemption amount

through the plan.  Both the taxing authority and purchaser objected to confirmation of the plan.

---

[30]  *In re Prado*, 340 B.R. 574 (Bankr.S.D.Tex. 2006).

[31] *Id.* at 584.

[32] *In re Pittman*, 549 B.R. 614 (Bankr.E.D.Penn. 2016).

The *Pittman* Court found that Pennsylvania law did not require the payment of the redemption within the nine (9) month period. Less critical to the reasoning of the opinion was the Court's finding that in this case, a conflict existed between §§ 108 and 1322 of the Bankruptcy Code. Perhaps because the purchaser had filed a secured claim, the Court reasoned:

> Reading § 108(b) to preclude debtors from extending these redemption payment periods under Chapter 13 plans directly conflicts with § 1322(b)(2), which explicitly permits a debtor to modify a secured claim over time. As long recognized, "where one section of the Bankruptcy Code explicitly governs an issue, another section should not be interpreted to cause an irreconcilable conflict." This Court accordingly holds that the proper way to reconcile § 108(b) with §1 322(b)(2) is to require a debtor to redeem by the deadline set forth in § 108(b), but to permit payment of the redemption amount over time as a secured claim pursuant to § 1322(b)(2).[33]

The holding of the *Pittman* case was supported by the Court's finding that Pennsylvania law allowed for payment of the redemption amount beyond the nine (9) month period to elect redemption. The second rationale is unnecessary to the findings.

Pittman's finding of conflict between §§ 108(b) and 1322(b) rests in large part on its determination that a right of redemption is really an obligation of the holder subject to a future action. By characterizing the debtor's redemptive right as a debt rather than an asset, the *Pittman* Court provides the party subject to the right with a potential enforceable obligation for payment. All that is needed is the exercise of the right, and *voila,* a contingent claim under 101(5) is created.

With all due respect to the *Pittman* Court, this Court can find no conflict between the operation of §§ 108(b) and 1322(b)(2) and, therefore, no reason to ignore the plan reading of §108(b). Section 1322(b)(2) governs the repayment of prepetition defaults *to creditors* in an effort to assist a debtor in his reorganizational effort. It allows a debtor to cure defaults to creditors over time through plan payments. Section 108(b) recognizes the distinction between creditors of the

---

[33] *Id.* at 629.

19

debtor and those with whom the debtor may have a redemptive right.  For this reason, the Code treats those with a redemptive relationship differently than those with a debtor/creditor relationship. Section 108(b) deals with the former, while section 1322(b)(2) the latter.    But even if one were to consider these two (2) Codal provisions in conflict, a basic tenant of statutory interpretation demands a result different than provided by *Pittman*.

Congress is presumed to know the effect its statutes have on the operation of the reorganizational scheme.[34]  Therefore, courts are bound to give effect to all provisions of the Code except when to do so would lead to absurd results.[35]  The *Pittman* Court argues that  section 108(b) conflicts with the more general goal of bankruptcy, that is to allow a debtor the opportunity to reorganize by paying obligations over time.  As a result, any interpretation of section 108(b) must bend  to that goal.  This reasoning ignores several principles of statutory construction.

By conflating an enforceable debt with a right of redemption, the *Pittman* Court determines that the distinct treatment provided for the two (2) conditions creates an irreconcilable conflict only resolved by eliminating the application of section 108(b) altogether.   Carried to its logical conclusion, *Pittman*'s reasoning makes *every* right of redemption into a contingent debt and, therefore, a general claim.  In resolving its dilemma,  *Pittman* fails to consider another principle of statutory interpretation:  when two (2) statutes conflict, the more specific governs over the general.[36]

---

[34] *See In re Griffith*, 206 F.3d 1389, 1394 (11th Cir. 2000) (citations omitted).

[35] *Mirant Corp. v. Potomac Electric Power Co. (In re Mirant Corp.*), 378 F.3d 511, 517 (5th Cir. 2004) (citing *Morton v. Mancari*, 417 U.S. 535, 551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974)).

[36] *Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 384, 112 S.Ct. 2031, 2037 (1992).

In this instance the more specific provisions of section 108(b) control in the case of redemption while section 1322 controls generally as to the rights of ordinary claimants. To hold otherwise eliminates the effect of section 108(b) when a perfectly rationale application of the statute is available. For these reasons, this Court declines to follow the reasoning of *Pittman*.[37]

Debtors also cite *In re Jimerson*[38] as support for their position. In *Jimerson*, Clarence Jimerson transferred property to his cousin Annie Jimerson in 1995. The property was sold at tax sale to Deed Co. on February 3, 2015. On May 22, 2016, Deed Co. notified Annie Jimerson of her right to redeem the property no later than June 27, 2016. On June 20, 2016, she transferred the property back to Clarence Jimerson who filed a bankruptcy petition under Chapter 13. Deed Co filed a secured proof of claim in the bankruptcy case. Clarence sought to redeem the property through payments under his plan.

The *Jimerson* Court found that Deed Co. was a secured claimant whose claim could be modified under section 1322(b)(2). The Court found, "the Debtor holds the Property subject to an obligation to pay the Redemption Amount or forfeit all of its remaining right to the Property, and therefore, ...Deed Co. has a claim secured by a lien."[39] Obviously persuaded by Deed Co's filing of a secured proof of claim, the Court failed to distinguish between the rights of a party with a redemptive interest and one without.

---

[37] The *Pittman* Court's attempt to "split the baby" by holding that the exercise of the right must be within the redemptive period but its satisfaction can be extended fails to honor the requirements of section 108(b). Section 108(b) requires that a debtor perform the conditions of redemption as provide by state law.

[38] *In re Jimerson*, 564 B.R. 430 (Bankr.N.D.Ga. 2017).

[39] *Id*. at 438 (citing *Francis v. Scorpion Group, L.L.C.* ( *In re Francis*, 489 B. R. 262 (Bankr.N.D. Ga. 2013).

What *Jimerson*, *Prado*, and *Pittman* all have in common is the fact that the property remained property of the estate, and the right to redeem was against each of the debtors' creditors. This Court believes that these facts lead the courts to conclude that a "cure" of the default or extension of the redemptive period was justified.   For the reasons explained above, this Court respectfully disagrees.  It is not the purview of this Court to ignore a specific directive of the Code. Whatever the Court's preference, section 108(b) is clear and provides a distinct and separate treatment for those holding redemptive rights.  AP is such a party and is entitled to enforcement of the Code as provided. Therefore, section 1322(b)(2) is simply inapplicable to the facts of this case..

Louisiana law provides that a property sold at tax sale may be redeemed within three (3) years from the date the tax sale is recorded.[40]  In the case at bar, the tax sale was recorded on October 25, 2013.  Therefore, the three (3) year period expired on October 24, 2016.  The Petition Date was October 6, 2014, so the redemption period had not yet expired.  Because the redemption period expired more than sixty (60 ) days after the order for relief,[41] pursuant to section 108(b), Debtors had until the end of the statutory period, or October 24, 2016, to redeem Providence.

### E.  The Automatic Stay

The filing of a Petition for Relief under the Bankruptcy Code:

...operates as a stay, applicable to all entities, of –

> (1) the commencement or continuation, including the issuance of employment of process of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that rose before the commencement of the case under this title; ...

---

[40]  La. Const. Art. VII, § 25(B)(1).

[41]  In a voluntary bankruptcy case, the commencement of the case constitutes an order for relief.  11 U.S.C. § 301(b).

> (3) any act to obtain possession of property of the estate or property from the estate or to exercise control over property of the estate; ...

Pursuant to section 362, AP is stayed from taking any further action, specifically the filing of a Petition to Confirm Tax Sale, without relief from this Court.   AP seeks relief from the automatic stay to continue the Petition to Confirm Tax Sale that it filed prior to receiving notice of the bankruptcy.[42]

While the automatic stay prevents AP from taking steps to quiet title, it does not stay the redemptive period.[43] "Allowing payment through the plan would effectively suspend the redemption period beyond the statutory period, rendering ...[§] 108(b) useless."[44]

Because the redemptive period expired without Debtors redeeming Providence, the Court will grant AP's Motion for Relief from the Automatic Stay so that it may proceed to confirm the Tax Sale.

## III.  Conclusion

AP is not a creditor of the estate and did not receive notice of the Plan, confirmation hearing, or confirmation order.  AP is not bound by the terms of the Plan because any attempt to materially change AP's rights is not sanctioned by the Bankruptcy Code or jurisprudence.  Further, the Plan fails to specify that Debtors intended through payment to the City to exercise a right of redemption

---

[42] *See* La. R.S. 47:2266.

[43] *In re Bolton*, 466 B.R. 839-40.  *See also Matter of Tynan*, 773 F.2d 177, 179 (7th Cir. 1985); *Johnson v. First Nat. Bank of Montevideo, Minn.*, 719 F.2d 270, 277 (8th Cir. 1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015 (1984) (stated redemptive period for redeeming foreclosed property not stayed).  *See also Counties Contracting and Const. Co. v. Constitution Life Co.,* 855 F.2d 1054, 1058-59 (3rd Cir. 1988) (statutory grace period for payment of life insurance premiums not stayed).

[44]  *In re Bolton*, 466 B.R. at 840.

affecting AP.  Finally, Debtors' failure to notify AP of this filing, the contents of the Plan, objection

deadline, or confirmation order violates due process.  Debtors' interpretation of the Plan amounts

to a taking.

Based on the City's proofs of claim, the Plan distributions to the City are not for redemption

of the Tax Sale to AP.

Debtors failed to redeem Providence within the time allowed by La. Const. Art. VII, §

25(B)(1) and 11 U.S.C. § 108.  The redemptive period has now expired.  The Court will grant the

Motion for Relief from the Automatic Stay filed by AP so that it may proceed to confirm the Tax

Sale.  A separate Order will be entered in accord with this ruling.

New Orleans, Louisiana, July 7, 2017.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge